**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY J. SCHOLL, JR., | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | **Case No. 2:25-cv-06257-JDW** |
| | : | |
| LAUREL HARRY, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

Anthony Scholl's Amended Complaint asserts claims arising out of strip searches

that occurred while he was in prison. Most of his claims lack detail or are not plausible,

but he has stated a plausible claim against two Correctional Officers for excessive use of

force on July 2, 2025.

## I.    BACKGROUND

### A.    Facts Underlying Amended Complaint

On February 26 and 27, 2025, Mr. Scholl was transported from SCI Greene to SCI

Phoenix.[1] In preparation for his trip, he was body scanned and stripped by the transfer

team. When he arrived at SCI Phoenix, he was again body scanned with clean results,

taken to I-block, pat searched, and placed in a "strip cage to strip again for the 3rd time

under constant supervision." (ECF No. 13 at 13.[2]) Believing that the multiple searches were

---

[1] Unless otherwise stated, the factual allegations are taken from Mr. Scholl's Amended Complaint and the attached materials. Where necessary, I have corrected punctuation, spelling, and capitalization errors will be cleaned up as needed.

[2] My citations are to the page numbering in the CM/ECF system.

unreasonable, he refused and asked "to be treated fairly," so the guards left him alone in the strip cage "for hours during dinner time while they fed everybody else except [him]."[3] (*Id.*)

The unknown members of the 7-man CERT team, led by Lt. Judge, sprayed him twice in the face with OC spray. It burned his eyes, skin, and lungs. Mr. Scholl then submitted, was cuffed, and taken to medical. Then, he was taken to a "camera cell" and "thrown down on the bed," even though he complied after the use of OC, and the CERT members cut off his clothes. They then shackled him, twisting his ankle in the process, jumped on him, and sexually assaulted him. He was then uncuffed and left in the cell for an unstated period with no clothes, no food, and a broken toilet. Mr. Scholl sustained injuries to his face, eyes, hands, feet, and back. He filed grievance number 1141091 about this incident. He also alleges there was "another altercation," otherwise unexplained, that Mr. Scholl claims was in retaliation for his filing a grievance. (*Id.* at 14.)

On July 2, 2025, in a meeting with the program review committee, Mr. Scholl expressed his feelings about officers on his block touching his books and putting chew tobacco in his food. After the meeting, he fell asleep in his cell and was awakened by CO Trotman banging on his door. CO Trotman ordered him to cuff up to go to a hearing room and conducted a pat search of Mr. Scholl in front of the cell. Mr. Scholl alleges that

---

[3] I do not understand Mr. Scholl to be making a separate claim based on missing his dinner, but if he did the claim based on missing a single meal would not be plausible. *Hawley v. Salamon*, No. 25-0728, 2025 WL 2154362, at *8 (M.D. Pa. July 29, 2025).

security disposed of the camera footage of the pat search because he had to sign a declaration form saying that CO Trotman pat searched him. At the hearing room, Lt. Martin told Mr. Scholl that he had orders to take Mr. Scholl to the POC "to take a shot." (*Id.* at 15.) He asked Lt. Martin to sign a declaration about this, but Lt. Martin refused to sign it. The treatment was abnormal because when Mr. Scholl normally receives medication or a shot, Dr. Glushkow will come to his block with the psych nurse and the only time he has ever gone to the POC is for punishment.

On July 2, Mr. Scholl was taken to a body scanner where he refused to be scanned because he "had already been harassed enough and aggressively pat searched." (*Id.*) He was then taken to a camera cell and, once uncuffed, CO King "assaulted [him] prior to giving [him] 3 orders to strip." (*Id.*) CO King punched him in the mouth and took him to the ground while CO Trotman held him by the neck, cutting off his ability to breathe. Cos King, Trotman, Clausen, Stevenson, and Eiland held him down, cut off his clothes, and sexually assaulted him. The strip search was not conducted "with proper attitude and tact" because they did not bring in "a psych or negotiator [and] out right assaulted [him] in retaliation to a grievance [he] filed." (*Id.*) Mr. Scholl later met with Dr. Glushkow, who gave him an ultimatum to take the shot of an antipsychotic drug on threat of committing him to a psychiatric hospital where he would be forced to take the shot. He complied to avoid the commitment and filed a grievance over the strip search.

3

**B.    Procedural History**

Mr. Scholl filed his original Complaint and a motion to proceed *in forma pauperis* on October 31, 2025. He made allegations regarding two distinct sets of claims: claims about uses of excessive force and strip searches; and claims concerning his security designation. On December 17, 2025, I issued a Memorandum and an Order that screened Mr. Scholl's claims and dismissed his Complaint in part with prejudice and in part without prejudice.[4] In screening his claims, I gave him leave to amend as to the use of force claims arising out of the use of OC spray and the claims about strip searches. I gave Mr. Scholl until January 16, 2026, to file an amended complaint. On January 6, 2026, at his request, I extended that deadline to March 2, 2026. When he did not meet that deadline, I dismissed his case in an Order dated March 27, 2026.

On May 14, 2026, Mr. Scholl filed a motion to reopen the case (titled as a motion for reconsideration), a motion to file an amended complaint, and the proposed amended complaint. (ECF Nos. 11, 12, 13.) In his motion to reopen, he states that when he attempted to mail his materials originally, they were returned to him. In the Amended Complaint, he

---

[4] In the original Complaint, Mr. Scholl asserted claims against Harry and "Pysch Dr. Glashakow." I dismissed those claims because Mr. Scholl included no substantive allegations concerning their involvement in the incidents he described. Mr. Scholl lists them as Defendants in the Amended Complaint but, other than stating that Dr. Glushkow was the person gave him an ultimatum to take the shot of an antipsychotic drug on threat of committing him to a psychiatric hospital where he would be forced to take the shot, he again makes no allegations that either one was involved in the strip searches or uses of excessive force.

4

asserts claims against Dr. Laurel Harry; Lt. Martin; Correctional Officers King, Stevenson, Trotman (with a different spelling), Clausen, and Eiland; Dr. Glushkow (with a different spelling), Lt. Judge, and the "7-man John Doe CERT Team."[5] The Amended Complaint reasserts constitutional claims based on Mr. Scholl's being strip searched by prison officials and the use of excessive force.

## II.   STANDARD OF REVIEW

Where, as here, a court grants a plaintiff leave to proceed *in forma pauperis*, it must determine whether the complaint states a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). That inquiry applies the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Pursuant to that standard, I must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). That means I must accept the factual allegations in the Complaint as true, draw inferences in favor of the plaintiff, and determine whether there is a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. When a plaintiff is proceeding *pro se*, I construe his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

---

[5] Mr. Scholl asserted claims against several defendants in his Original Complaint who he does not name in the Amended Complaint. I will therefore terminate those defendants.

## III.   DISCUSSION

Mr. Scholl again asserts constitutional claims against the DOC employees for violation of his Fourth and Eighth Amendment rights based on strip searches and the uses of excessive force.[6] The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.   Strip Search

Mr. Scholl alleges that the strip searches that occurred in connection with his transfer to SCI Phoenix and excessive force used to get him to comply with those searches violated his Fourth and Eighth Amendment rights. He makes similar claims about the incident on July 2, 2025, when officers ordered him to strip in preparation for receiving an injection. As I explained when I screened the original Complaint, claims concerning a strip search are cognizable under the Eighth Amendment but only if a plaintiff alleges that the strip search was either physically or sexually abusive. *See Farmer v. Plumeri*, No. 22-957,

---

[6] In his original Complaint, Mr. Scholl asserted claims under the First Amendment and the RLUIPA and claims concerning the consequences of his security designation, but he does not assert them again in the Amended Complaint. Because the Amended Complaint is the controlling pleading, I do not consider those claims to be part of the case. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025).

2023 WL 35869, at *2-3 (D. N J. Jan. 4, 2023). Prison officials may also conduct visual body cavity searches without probable cause so long as they do so in a reasonable manner. *Id.*

Mr. Scholl's allegations cannot establish a violation. He may have found being subjected to multiple strip searches unpleasant and frustrating, but he hasn't alleged a plausible claim. The occurrences of multiple strip searches during a prisoner's transfer between institutions, namely at both the place of departure and the place of arrival, does not make the fact of multiple searches being conducted unreasonable given the United States Supreme Court's admonition that courts should defer to prison officials to devise reasonable search policies to detect and deter the possession of contraband in their facilities. *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 132 S. Ct. 1510, 1512 (2012). His transfer created security concerns upon departure and on the transport and again at arrival. I have to consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In this circumstance, the multiple searches were reasonable at the beginning and end of his transit.

The strip search on July 2, 2025, was apparently conducted in anticipation of Mr. Scholl receiving an injection. Nothing about prison officials failing to use tact, to display a "proper attitude," or using negotiators makes plausible Mr. Scholl's claim that the manner or justification for the strip search was unreasonable. *See Hart v. Celaya*, 548 F. Supp. 2d 789, 803 (N.D. Cal. 2008). In addition, nothing the Amended Complaint indicates

that the place where the search was conducted was unreasonable. Mr. Scholl was taken there for the specific purpose of receiving the injection, and he fails to describe anything about the location indicating it was unreasonable for prison officials to have conducted the search there.

Mr. Scholl's reasserted allegations that he was subjected to "sexual assaults" are conclusory. While Mr. Scholl repeatedly uses the term, he again fails to describe what happened in any meaningful sense. Nor does he offer any substance to support his claim for retaliation. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023). I will therefore dismiss the strip search claims.

## B.    Excessive Force

A claim of excessive force under the Eighth Amendment must allege that prison officials unnecessarily and wantonly inflicted pain in a manner that offends contemporary standards of decency, *i.e.*, the force was used maliciously and sadistically for the very purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *see also Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015). In screening an Eighth Amendment excessive force claim under § 1915, a court asks whether the prisoner has alleged plausibly that the force was applied maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *Id.* (citing *Hudson*, 503 U.S. at 7.)

The use of force during the strip search incident to the transfer process fails to assert a plausible claim because there is no allegation that the force was applied

maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. The allegations of the Amended Complaint make clear that officers used force to secure Mr. Scholl after he failed to comply with the strip search order. The surrounding circumstances that Mr. Scholl presents in the Amended Complaint, such as his admission that he refused to comply with the strip search order, makes implausible the claim that the use of a strip cage, deployment of OC spray, and officials having to cut off his clothing were unreasonable or unjustified or were applied maliciously and sadistically solely to cause harm, even though his leg was twisted in the process.

The use of force on July 2, 2025, on the other hand, does state a plausible claim against COs King and Trotman. Mr. Scholl alleges that CO King punched him in the mouth and took him to the ground while CO Trotman held him by the neck cutting off his ability to breathe, all prior to giving him orders to strip for the search. While he continues that COs Clausen, Stevenson, and Eiland held him down, cut off his clothes and sexually assaulted him, these allegations do not rise to the same level because Mr. Scholl concedes that these officers used force due to his failure to comply with the search, and the sexual assault claim is conclusory. Therefore, I will dismiss the excessive force claim against all officers except COs King and Trotman.

## IV.    CONCLUSION

For the reasons stated, I will dismiss Mr. Scholl's claims based on strip searches and body cavity searches. I will also dismiss his excessive force claims other than those

9

asserted against COs King and Trotman. I will terminate all defendants other than COs King and Trotman. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

**JOSHUA D. WOLSON, J.**

June 10, 2026